**LEVI STRAUSS & CO.,**
Plaintiff–Appellee,

v.

**UNITED STATES, Defendant–Appellant.**

No. 97–1536.

United States Court of Appeals, Federal Circuit.

July 27, 2000.

Rehearing and Rehearing En Banc Denied Oct. 19, 2000.

Ronald W. Gerdes, Sandler, Travis & Rosenberg, P.A., of Washington, DC, argued for plaintiff-appellee. With him on the brief were Edward M. Joffe, Gilbert Lee Sandler, Gerson M. Joseph, and David E. Cohen.

Bruce G. Forrest, Attorney, Civil Division, Appellate Staff, Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief was David W. Ogden, Acting Assistant Attor-

ney General, and William Kanter, Deputy Director. Also on the brief were Saul Davis, Senior Trial Counsel; and Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, Department of Justice, of New York, New York. Of counsel on the brief were David M. Cohen, Director; and Karen P. Binder, Assistant Chief Counsel, International Trade Litigation.

Before NEWMAN, MICHEL, and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

On remand from the United States Supreme Court, *see United States v. Levi Strauss & Co.*, 527 U.S. 1001, 119 S.Ct. 2335, 144 L.Ed.2d 233 (1999) (mem.), defendant United States seeks reversal of the United States Court of International Trade's determination that plaintiff Levi Strauss & Company's imported articles qualified for the partial exemption from import duties specified in Subheading 9802.00.80 of the Harmonized Tariff Schedule of the United States, codified at 19 U.S.C. § 1202 (1994). *See Levi Strauss & Co. v. United States*, 969 F.Supp. 75, 81–82 (1997). Because the imported goods are disqualified from the partial exemption by application of 19 C.F.R. § 10.16(c), we reverse the judgment of the Court of International Trade and remand with instructions to enter judgment in favor of the United States.

I

Levi Strauss & Company ("Levi") designs, manufactures, and markets a wide range of apparel. The merchandise at issue in this appeal consists of boys' "stonewashed" jeans sold by Levi in the United States under its LEVI trademark.

Because some consumers prefer to purchase denim jeans that are slightly faded and softer than "new" denim, many manufacturers, including Levi, remove the oils and waxes used in the denim fabric weaving process that otherwise retard the fading of the original indigo color. In addition, the color is lightened by washing the jeans. The lightening and softening process can be accelerated by stonewashing, a technique that typically involves adding stones or similar particles to the wash to abrade the fabric. Certain manufacturers, including Levi in the instant case, achieve the same stonewashing effect by adding an enzyme to the wash.

The denim fabric for the merchandise at issue was cut to shape in Spartanburg, South Carolina, and then shipped, along with other components, such as buttons, threads, and zippers, to a company located in Guatemala. Prior to reentry into the United States, the jeans were assembled and stonewashed (actually, enzyme-washed).

Upon their import into the United States, the United States Customs Service ("Customs") determined that the enzyme-washing process took the jeans outside of the classification of Subheading 9802.00.80 of the Harmonized Tariff Schedule of the United States ("HTSUS"), which provides a partial exemption from otherwise-applicable duties. In relevant part, Subheading 9802.00.80, 19 U.S.C. § 1202, is limited to:

> Articles ... assembled abroad in whole or in part of fabricated components, the product of the United States, which ... (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating and painting....

Customs has promulgated a regulation, 19 C.F.R. § 10.16(c), interpreting the "operations incidental to assembly process" language used in the HTSUS:

> (c) *Operations not incidental to the assembly process.* Any significant pro-

cess, operation, or treatment other than assembly whose primary purpose is the fabrication, completion, physical or chemical improvement of a component, or which is not related to the assembly process, whether or not it effects a substantial transformation of the article, shall not be regarded as incidental to the assembly and shall preclude the application of the exemption to such article. The following are examples of operations not considered incidental to the assembly as provided under subheading 9802.00.80, Harmonized Tariff Schedule of the United States (19 U.S.C. 1202):

. . .

> (4) Chemical treatment of components or assembled articles to impart new characteristics, such as showerproofing, permapressing, sanforizing, dying or bleaching of textiles. . . .

The regulation was adopted in 1975 by the Commissioner of Customs, after notice-and-comment rulemaking. *See* 39 Fed. Reg. 24651 (1974) (proposed regulation); 40 Fed.Reg. 43021 (1975) (final regulation).

Pursuant to section 10.16(c)(4), which denotes "chemical treatment" and "bleaching of textiles" as operations that fall outside of the exemption provided by HTSUS 9802.00.80, Customs denied the exemption to duty. Levi challenged the denial of its protest against such classification by filing this suit in the Court of International Trade. *See* 19 U.S.C. § 1515 (1994) (establishing protest and review procedures for Customs classification decisions).

The Court of International Trade concluded, pursuant to the multi-factor test established by this court's predecessor in *United States v. Mast Indus., Inc.,* 69 C.C.P.A. 47, 668 F.2d 501 (1981), that the enzyme-washing operation was incidental to the assembly process and thus did not disqualify the pants from treatment under HTSUS 9802.00.80. *See Levi Strauss & Co. v. United States,* 969 F.Supp. 75, 81–82 (1997). The court did not consider the effect of 19 C.F.R. § 10.16(c).

Customs appealed to this court, which declined to consider the regulations under the framework set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and affirmed the Court of International Trade. *See Levi Strauss & Co. v. United States,* 156 F.3d 1345, 1348, 1350–51 (1998). Customs then petitioned for a writ of certiorari to the Supreme Court, which was granted. *See* 527 U.S. 1001, 119 S.Ct. 2335, 144 L.Ed.2d 233 (1999). The Supreme Court vacated this court's judgment and remanded the case for further consideration in light of *United States v. Haggar Apparel Co.,* 526 U.S. 380, 119 S.Ct. 1392, 143 L.Ed.2d 480 (1999), which held that HTSUS 9802.00.80 was ambiguous, for purposes of *Chevron* analysis, thereby requiring courts to defer to Customs regulations manifesting a reasonable interpretation of that Subheading. *See id.* at 391–92, 119 S.Ct. 1392.

■ Upon remand, we ordered additional briefing and oral argument, *see Levi Strauss & Co. v. United States,* 217 F.3d 849, 1999 WL 798027 (1999) (order), and now hold that Customs correctly applied 19 C.F.R. § 10.16(c) to cover the imported enzyme-washed jeans, thereby precluding classification under HTSUS 9802.00.80.

II

In a companion case, *Haggar Apparel Co. v. United States,* issued today, we hold that 19 C.F.R. § 10.16(c) is a reasonable interpretation of the "operations incidental to the assembly process" requirement of HTSUS 9802.00.80 and is thus entitled to deference pursuant to *Chevron. See* No.

97–1002, slip op. at 12 (Fed.Cir. July 27, 2000). Because the identical issue is raised in this case, we hereby incorporate by reference the entirety of section II of the *Haggar Apparel* opinion. This holding disposes of Levi's primary argument against Customs' use of 19 C.F.R. § 10.16(c) in determining whether the imported jeans in this case could be classified according to HTSUS 9802.00.80. *See id.,* slip op. at 8–11 (rejecting argument that § 10.16(c) is contrary to the expressed intent of Congress).

This case thus turns on the question of whether the enzyme-washing (or stone-washing) process falls within the categories of operations described in 19 C.F.R. § 10.16(c) as *"not* incidental to the assembly process" (emphasis added). Because neither party disputes any of the material facts involving the imported articles, this question reduces to an application of the language of 19 C.F.R. § 10.16(c).

■ We have little trouble concluding that Customs properly applied its regulation in this case. Section 10.16(c)(4) specifically lists "chemical treatment" and "bleaching of textiles" as categories of operations that are not "incidental to the assembly process." There is no dispute that the enzyme-wash lightens the color and softens the denim fabric via chemical activity, which falls well within the reasonable scope of the phrase "bleaching of textiles," not to mention the phrase "chemical treatment." We conclude that Customs did not err in applying section 10.16(c) to the enzyme-wash operation conducted on the imported jeans.

## CONCLUSION

Because Customs' interpretation of HTSUS 9802.00.80, 19 U.S.C. § 1202, as found in 19 C.F.R. § 10.16(c), is reasonable, it is thus entitled to substantial judicial deference. *See Haggar Apparel,* No.

97–1002, slip op. at 11. Further, Customs' application of section 10.16(c)(4) to the stonewashing or enzyme-washing operation conducted on Levi's imported jeans in this case is not incorrect. We therefore conclude that Customs' determination that the articles do not qualify for the partial exemption from duty allowed by HTSUS 9802.00.80 must be sustained. The Court of International Trade's judgment to the contrary is accordingly reversed, and we remand the case with instructions to enter judgment in favor of the United States.

## COSTS

No costs.

## REVERSED AND REMANDED.